91 F.3d 867
 Pens. Plan Guide P 23923X
Michael K. MORTON, Plaintiff-Appellant,
v.
Edward M. SMITH, Ronald Howard, Richard Reynolds, Harlin
Newlin, Mike Meyer, W. Tom Arnold, William Butler, William
Regenhart, Thomas Tinsley and Virgil Wortham, as Trustees of
the Southern Illinois Laborers and Employers Health and
Welfare Fund, Defendants-Appellees.
 No. 95-2674.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 10, 1996.
Decided July 29, 1996.
 
 Eric L. Terlizzi (argued), Pfaff, Garner & Terlizzi, Salem, IL, for Plaintiff-Appellant.
 Patrick J. O'Hara (argued), Michael W. O'Hara, Cavanagh & O'Hara, Springfield, IL, for Defendants-Appellees.
 Before WOOD, Jr., CUDAHY and ROVNER, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 Michael Morton was a covered beneficiary of a health and welfare fund regulated by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq. His benefits from the fund included reimbursement for most medical expenses, but not for medical expenses associated with "intentionally self-inflicted injuries." Morton suffered an injury when, according to his lawyer's account, he was "very, very drunk ... and did something very, very stupid." The trustees of the fund decided that this injury was intentionally self-inflicted, and they denied him benefits. Morton sued them in the district court, contending that their interpretation of the terms of the fund's provisions was unreasonable and therefore violated ERISA. The district court rejected this contention and ruled for the trustees. We affirm.I.
 
 
 2
 At two o'clock in the morning on August 28, 1994, Michael Morton was in a bar in Centralia, Illinois after an evening of carousing with friends, and he was drunk. When he and another patron had an altercation, the bar's bouncer threw him out of the back door. Morton chose an unorthodox route to the front. He found a way to clamber up the side of the building and onto the bar's roof. From this perch, he could see his friends leaving by the front door. In an attempt to catch up with them, he lowered himself to the metal awning across the front of the bar and jumped to the sidewalk, an eight-foot drop. The fall broke his leg, and he was taken to the hospital where doctors treated his leg and measured his blood alcohol level at .23. The medical bills associated with this injury amounted to more than $20,000.
 
 
 3
 At the time, Morton was a beneficiary of a trust created by the Southern Illinois Laborers' District Council, an association of local labor unions, and the Associated General Contractors of Illinois. This trust is regulated by ERISA. As determined by the trust agreement, the trust is known as the Southern Illinois Laborers and Employers Health and Welfare Fund (the Fund), and it purports to provide health care benefits, life insurance and other similar benefits. The trust agreement gives the trustees the authority to determine, adopt and administer benefit plans consistent with its purpose. According to the terms of one such benefit plan, the Fund reimburses its beneficiaries for most medical expenses, but it denies reimbursement for "[a]ny loss, expense or charge which results from an intentionally self-inflicted injury or sickness, suicide or attempted suicide, while sane or insane." Morton submitted his medical bills to the Fund, but it refused to pay them, concluding that the injury giving rise to the bills was intentionally self-inflicted. The trust agreement created a procedure for appealing this decision, and Morton pursued it, but the trustees stood by their conclusion.
 
 
 4
 Morton filed a suit in state court under ERISA, claiming that the trustees violated ERISA by unreasonably interpreting the term "intentionally self-inflicted injury" in the benefit plan. The case was removed to the district court where he and the trustees filed a joint stipulation of the facts and made cross-motions for summary judgment. The district court ruled in favor of the trustees, deciding that it could not overrule the trustees' interpretation of the benefit plan because it was not arbitrary and capricious.
 
 II.
 
 5
 Morton challenges the district court's summary judgment in three ways. He first questions whether the district court employed the proper standard of review in its consideration of the trustees' interpretation of the benefit plan. He then contends that the trustees' decision cannot be affirmed under any standard of review because it was made outside the scope of their authority. Finally, he maintains that their interpretation was unreasonable even when considered under a deferential standard of review. Especially when the summary judgment depends upon legal conclusions like those that Morton challenges here, our review is de novo. See Butler v. Encyclopedia Brittanica, Inc., 41 F.3d 285, 287 (7th Cir.1994).
 
 A.
 
 6
 The nature of ERISA determines the standard by which courts review the administration of a covered benefit plan. When it adopted ERISA, Congress sought to regulate the way in which the fiduciaries of employee benefit plans administered those plans by establishing standards of "conduct, responsibility, and obligation" for them. See 29 U.S.C. § 1001(b). These standards are defined in a federal common law which is modeled on the common law of trusts. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110-11, 109 S.Ct. 948, 954-955, 103 L.Ed.2d 80 (1989). When the fiduciaries of a covered plan decide who is eligible for benefits, the common law of ERISA controls their decision-making. See id. at 108, 109 S.Ct. at 953. If the beneficiary of a plan believes that its fiduciaries have improperly denied him benefits, he may bring an action to challenge their decision. 29 U.S.C. § 1132(a)(1)(B).
 
 
 7
 In Firestone, the Supreme Court determined how courts should review the decision-making of plan fiduciaries in an action challenging the denial of benefits. Following the fundamental principles of trust law, the Court held that the judicial review of benefit eligibility determinations will vary in accordance with the extent of the fiduciaries' power to construe the terms of the benefit plan. Firestone, 489 U.S. at 110-15, 109 S.Ct. at 954-57. When the fiduciaries do not have any discretion to construe the terms of the plan, courts make a de novo review of their interpretations. Id. at 115, 109 S.Ct. at 956-57. When the fiduciaries do have the discretion to construe the plan's terms, courts are deferential, overturning the fiduciaries' interpretations only if they constitute an abuse of discretion. Id.
 
 
 8
 We have previously held that Firestone did not establish a single standard for reviewing the discretionary decisionmaking of plan fiduciaries. Rather, Firestone presented a "smorgasbord of possibilities" for standards of review. Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund, 900 F.2d 1138, 1141-43 (7th Cir.1990). The extent of discretion determines the extent of judicial deference. When fiduciaries have the discretion to make "reasonable" interpretations of a plan, their decisions are reviewed according to the familiar abuse-of-discretion standard. Id. at 1142. A decision constitutes an abuse of discretion when it is "not just clearly incorrect but downright unreasonable." Fuller v. CBT Corp., 905 F.2d 1055, 1058 (7th Cir.1990). When fiduciaries are bound to interpret the plan under the broad standard of good faith, their discretion is even more extensive, and judicial review is even more deferential. Courts will then examine the exercise of this degree of discretion to determine whether it is arbitrary and capricious. Exbom, 900 F.2d at 1142.
 
 
 9
 Section 10.01 of the trust agreement that created the Fund defines the nature of the discretion afforded to the trustees. Section 10.01 provides, in its entirety:
 
 
 10
 This trust is created and adopted in the State of Illinois and all questions pertinent to the validity or construction of this Instrument and of the acts and transactions of the parties hereto shall be determined in accordance with the laws of the State of Illinois. The Trustees shall construe the provisions of this Trust Agreement and any plan adopted hereunder, and any reasonable construction thereof by them shall be binding on all interested persons.
 
 
 11
 In considering the cross-motions for summary judgment, the district court concluded that this section required it to determine whether the trustees of the Fund were arbitrary and capricious when they decided that Morton's injury was intentionally self-inflicted.
 
 
 12
 Morton argues that the district court was too deferential, and he is correct, at least in a technical sense. As Exbom held, the arbitrary-and-capricious standard is appropriate when discretion is limited only by good faith. When the plan administrators have the discretion to make reasonable constructions of the terms of the plan, courts should review their interpretations for the abuse of discretion. According to § 10.01, the trustees here only have the discretion to make reasonable constructions. The district court should therefore have reviewed their decision according to the abuse-of-discretion standard. The district court invoked the arbitrary-and-capricious standard, but its analysis was the functional equivalent of the abuse-of-discretion standard because it examined the trustees' interpretation for reasonableness.
 
 B.
 
 13
 Morton argues that the trustees' decision in his case is not entitled to our deference, regardless of the standard of review. He bases this argument on the idea that the trustees' discretionary authority did not include the power to interpret "intentionally self-inflicted injury" as they did. If we conclude that their interpretation was indeed ultra vires, we would not review it for abuse of discretion.
 
 
 14
 In Morton's view, the terms of § 10.01 establish fairly narrow limits on the trustees' discretion to construe the terms of the benefit plan. He finds one limit in the provision that the trustees' "construction of this Instrument ... shall be determined in accordance with the laws of the State of Illinois." According to Morton, this provision confines the trustees' discretion by requiring them to interpret the benefit plan under Illinois law. This reading leads him to the conclusion that any interpretation contradicting Illinois law exceeds the scope of their discretion. He contends that the trustees have made such a defective interpretation here because their interpretation of the plan is not consistent with the rules of Illinois insurance law, which requires that the terms of an insurance contract excluding coverage should be narrowly construed in favor of the insured. See Lubeznik v. HealthChicago, Inc., 268 Ill.App.3d 953, 206 Ill.Dec. 9, 12, 644 N.E.2d 777, 780 (1 Dist.1994).
 
 
 15
 This proposed limitation on the scope of the trustees' discretionary authority is untenable because Morton has misread § 10.01. That section brings "this Instrument" under the ambit of Illinois law, but "this Instrument" is the trust agreement, not the benefit plan. Thus, § 10.01 does not require construction of the benefit plan according to Illinois law; it only requires that Illinois law determine the construction of the trust agreement. Moreover, if Morton's reading of § 10.01 were correct, that section could not be given effect. The federal common law of ERISA preempts most state law in regulating the interpretation of benefit plans. See Shaw v. Delta Air Lines, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900-01, 77 L.Ed.2d 490 (1983); UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of America, 998 F.2d 509, 512 (7th Cir.1993). Consequently, we cannot conclude that the trustees' discretion is limited to obedience to Illinois law.[1]
 
 
 16
 Morton suggests that there is another limit on the trustees' interpretive discretion, arguing that the trustees can never have the discretion to construe what he calls "common, ordinary words." He seems to base this argument on the principle that the terms of an ERISA benefit plan must be given their common, ordinary meaning. That is, they must be construed as a lay person would construe them, not as someone with specialized knowledge would. Phillips v. Lincoln Nat'l Life Ins. Co., 978 F.2d 302, 314 (7th Cir.1992). Of course, we accept this principle, but it does not support Morton's argument. Common, ordinary words often have more than one common, ordinary meaning. When a common, ordinary word with multiple meanings appears in a plan, it must be construed. A trustee with the discretion to construe generally is not prevented from construing such a word; he or she is only prevented from giving that word an uncommon, extraordinary meaning. This principle defines the manner in which trustees must exercise their discretion; it does not establish a limit of that discretion. It is really a specific way to define what constitutes a reasonable construction. Morton has thus failed to show that there are any special limits on the trustees' discretion to construe the plan. Their discretion was to make reasonable constructions.
 
 C.
 
 17
 We must therefore determine whether the trustees abused their discretion when they defined Morton's broken leg as an intentionally self-inflicted injury. We cannot find an abuse if the trustees employed a definition that a reasonable person would use. Fuller, 905 F.2d at 1058. Defining Morton's injury here involved a construction of the term "intentionally self-inflicted injury" and an application of the facts of Morton's case to that construction. If we can hypothesize a reasonable construction and a reasonable application of that construction that would justify the trustees' definition, we can conclude that the trustees were reasonable.
 
 
 18
 Morton thinks that the trustees were unreasonable in both aspects of their definition, maintaining that there is one and only one reasonable construction of the term "intentionally self-inflicted injury" and that his injury is not included under it. His preferred construction defines an "intentionally self-inflicted injury" as any injury that is not an accident, and it defines an accident as something that is not the substantially certain result of an intentional act. Morton argues that a federal court has endorsed this construction when interpreting an ERISA benefit plan in Todd v. AIG Life Ins. Co., 47 F.3d 1448 (5th Cir.1995) (construing the meaning of "accidental injury" on de novo review). And he insists that, under this construction, his broken leg would not be an intentionally self-inflicted injury. Although he admits that he intended to jump from an eight-foot height, he contends that his injury was not a substantially certain result of that intentional act, pointing out that his job as an oil-field laborer required him to make many similar jumps and that he had never been injured from such jumps in the past. He thus offers his own experience as proof that his injury was not the substantially certain result of his act.
 
 
 19
 We cannot agree that this is the only reasonable way to think about Morton's injury. We do not doubt that it is one reasonable way, and if we had to assume authority for construing Morton's benefit plan on our own, we might adopt it. But we are being deferential here, and there is another reasonable way to define Morton's injury as "intentionally self-inflicted" (as we shall show in a moment). For Morton does not present the only reasonable construction of "intentionally self-inflicted injury." In considering whether the trustees were arbitrary and capricious, the district court found another construction of this term based on concepts commonly used in insurance law. The district court accepted Morton's premise that an "intentionally self-inflicted injury" is a non-accidental injury. The court then noted that, in the parlance of insurance law, an injury is not an accident if it is the natural and probable consequence of an intentional act. See 10 Couch on Insurance 2d § 41.17 (1982). The district court reasoned that an intentionally self-inflicted injury is an injury that is the natural and probable consequence of an intentional act. Because this construction is founded on a rational application of well-established legal concepts, we conclude that it is a reasonable one. It would have been reasonable for the trustees to apply a construction leading to the conclusion that a broken leg is a natural and probable consequence of a jump from eight feet above the ground. Consequently, we can imagine one scenario in which a reasonable person would have made the same decision as the trustees. This is enough to show that the trustees did not abuse their discretion.
 
 
 20
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 As an aside, we note that the rule of contract interpretation that Morton invokes here can sometimes be relevant to the interpretation of an ERISA benefit plan. The federal common law of ERISA does provide that ambiguous terms in benefit plans should be construed in favor of beneficiaries. Phillips v. Lincoln Nat'l Life Ins. Co., 978 F.2d 302, 311 (7th Cir.1992). But this rule has no application here. Often called the rule of contra proferentem, it is a device for determining the intended meaning of a contract term in the absence of conclusive evidence about intent. See Winters v. Costco Wholesale Corp., 49 F.3d 550, 554 (9th Cir.1995). Courts invoke this rule when they have the authority to construe the terms of a plan, but this authority arises only when the administrators of the plan lack the discretion to construe it themselves. See Firestone, 489 U.S. at 110-15, 109 S.Ct. at 954-57. Therefore, it is only used when courts undertake a de novo review of plan interpretations. See Phillips, 978 F.2d at 311-12; see also Winters, 49 F.3d at 554. When the administrators of a plan have discretionary authority to construe the plan, they have the discretion to determine the intended meaning of the plan's terms. In making a deferential review of such determinations, courts have no occasion to employ the rule of contra proferentem. Deferential review does not involve a construction of the terms of the plan; it involves a more abstract inquiry--the construction of someone else's construction. Because this case engages us in this more abstract exercise, we will not apply the rule