**Terry L. COZZIE, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

No. 95 C 4235.

United States District Court, N.D. Illinois, Eastern Division.

March 20, 1997.

Russell W. Hartigan, James Patrick Newman, Russell W. Hartigan & Associates, Chicago, IL, for Plaintiff.

Joseph J. Hasman, David Faulkner Schmidt, Peterson & Ross, Chicago, IL, for Defendant.

### ORDER

ANN CLAIRE WILLIAMS, District Judge.

Magistrate Judge Rebecca R. Pallmeyer has issued a Report and Recommendation ("R & R") recommending that this court

grant defendant's motion for summary judgment and deny plaintiff's motion for summary judgment

Plaintiff Terry L. Cozzie objects that Judge Pallmeyer improperly applied the "arbitrary and capricious" standard (for several reasons), and that the decision of Defendant Metropolitan Life Insurance Company ("MetLife") was arbitrary and capricious (for several reasons). After carefully reviewing the R & R, the factual record, and Cozzie's arguments, the court overrules Cozzie's objections, finding that Judge's Pallmeyer applied the appropriate standard and reached the proper result.

MetLife objects to two relatively minor aspects of the R & R. The court overrules MetLife's objection to footnote five of the R & R, because the footnote is supported by the record, makes logical sense, and (in any event) has no bearing on the outcome of this case. However, the court agrees with MetLife's "ministerial" objection to footnote six of the R & R because *McLain v. Metropolitan Life Ins. Co.*, 820 F.Supp. 169 (1993) involved cocaine (as the R & R correctly states in the text on page 13), not codeine (as the R & R incorrectly states in a parenthetical in footnote six). Therefore, footnote six should be corrected so that the *McLain* parenthetical refers to cocaine rather codeine.

In conclusion, the court overrules Cozzi's objections, overrules MetLife's first objection, grants MetLife's second objection, adopts the R & R in full with one extremely minor correction, denies Cozzi's motion for summary judgment, and grants MetLife's motion for summary judgment.

## *REPORT AND RECOMMENDATION*

PALLMEYER, United States Magistrate Judge.

Plaintiff Terry Cozzie brought this action against Defendant Metropolitan Life Insurance Company ("MetLife") alleging wrongful denial of accidental death benefits under an Ameritech Company ("Ameritech") employee welfare benefit plan, funded in relevant part by a group life insurance policy issued by MetLife. On June 21, 1995, Plaintiff filed a complaint in the Circuit Court of Cook County seeking state law contract and exemplary damages. Because the policy in question is regulated by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001–1461, Defendant removed the case to federal court pursuant to 28 U.S.C. § 1441 and 1331. On September 14, 1995, Plaintiff filed an amended complaint adding allegations of ERISA violations and seeking contract, exemplary, and punitive damages.

Both parties filed cross-motions for summary judgment on July 10, 1996, and on August 1, 1996, the case was referred to this court pursuant to 29 U.S.C. § 636(b). Plaintiff argues that she is entitled to the accidental death benefits from her late husband's policy because the insurance plan contains ambiguous language that must be construed in favor of coverage. Alternatively, Plaintiff insists that Defendant's decision to deny the benefits was arbitrary and capricious. Defendant, on the other hand, claims that it reasonably concluded that the decedent's death was not accidental as contemplated by the plan and was, therefore, specifically excluded from coverage. For the reasons set forth below, Plaintiff's motion for summary judgment should be denied and Defendant's motion should be granted.

## *FACTUAL BACKGROUND* [1]

On November 6, 1994, Robert Cozzie (the "decedent") died as a result of a single car crash in Putnam County, Illinois. (The Parties' Joint Local Rule 12(M) Statement of

---

1. The following facts are drawn from the parties' Joint Local Rule 12(M) Statement, as well as pertinent documents attached thereto. Plaintiff moved to strike Defendant's 12(N) Statement and the affidavit of Jane Tarkowski, arguing that the submission of these materials contravened the parties' discovery agreement, and that the affidavit contains conclusory statements not based on personal knowledge. (Plaintiff's Motion to Strike, at 2–4.) Plaintiff's assertions notwith-

standing, Defendant's materials are consistent with the court's order of May 20, 1996 granting the parties leave to file supplemental or separate 12(M) or 12(N) Statements. Although the court agrees that certain of Tarkowski's statements are improper, her testimony regarding MetLife policies and procedures is competent and admissible. The court therefore relies on this evidence to the limited extent articulated here.

Material Facts as to Which There is No Genuine Issue (hereinafter "Jt. 12(M) Statement") ¶ 2; Ex. B to Jt. 12(M) Statement, at 46, 49.) According to the investigating officer, the decedent drove his vehicle off a rural highway after missing a curve in the road. (Ex. B to Jt. 12(M) Statement, at 33–34.) The vehicle traveled down a ditch, struck an embankment, and rolled over approximately three times, ejecting the decedent from the driver's seat and pinning him underneath the vehicle. (*Id.* at 34.) The pressure of the car on his chest rendered Mr. Cozzie unable to breathe, and he died of asphyxiation. (*Id.* at 34, 49.) Toxicology tests performed a short time after the crash revealed that the decedent's blood alcohol content ("BAC") was 0.252 percent, more than two and a half times the legal limit under Illinois law.[2] (*Id.* at 35.)

At the time of his death, the decedent was an employee of Ameritech and a participant in the Ameritech Life Insurance Program (the "Plan"). (Jt.12(M) Statement ¶ 1; Ex. A to Jt. 12(M) Statement, at 22.) The Plan is an employee welfare benefit plan regulated by ERISA and funded primarily by a group life insurance policy issued by MetLife, the Plan's claim fiduciary. (Jt.12(M) Statement ¶ 1.) Under the Plan's Basic Life Coverage, an employee's beneficiaries receive payments when the employee dies (from any cause) while covered by the program. (Ex. A to Jt. 12(M) Statement, at 7.) Additional coverage is also provided under the accidental death and dismemberment provisions ("AD & D") where death results from injuries caused solely by an accident. (Id. at 8.) These benefits are paid if "the employee [dies] . . . while insured and as a direct result of the accident and independently of all other causes." (*Id.* at 9.) Accidental death benefits are not available, however, where death is caused by injuries that were "purposely self-inflicted." (*Id.*)

The decedent was enrolled in both of these plans (Basic Life and AD & D) in the amount of $42,000 each. He designated his wife, Plaintiff Terry Cozzie, as the beneficiary.

(Jt.12(M) Statement ¶ 2.) After his death, Plaintiff submitted a claim for benefits under each policy. (*Id.*) Shortly after receiving Plaintiff's claim on January 3, 1995, MetLife paid her $42,000 in basic life insurance benefits plus applicable interest. (*Id.;* Ex. B to Jt. 12(M) Statement, at 50–51.) On or about March 15, 1995, however, MetLife notified Plaintiff that her claim for accidental death benefits was denied. (Jt.12(M) Statement ¶ 5.)

MetLife's explanation of the decision to deny Plaintiff AD & D benefits was two-fold. Defendant first reasoned that "the act of driving while so impaired rendered the infliction of serious injury or death reasonably foreseeable and, hence, not accidental as contemplated by the Plan." (Ex. B to Jt. 12(M) Statement, at 2, 26.) In addition, MetLife concluded that the physical and mental impairments caused by the decedent's alcohol consumption were "injuries intentionally self-inflicted" and, therefore, specifically excluded from AD & D coverage. (*Id.*) MetLife affirmed its decision to deny Plaintiff's claim on or about June 28, 1995. (Jt.12(M) Statement ¶ 5.) This lawsuit followed.

### DISCUSSION

#### A. *Summary Judgment Standard*

Summary judgment is appropriate where the court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In considering such a motion, the court accepts as true the facts set forth by the non-movant, and draws all justifiable inferences in that party's favor. *Wade v. Byles,* 83 F.3d 902, 904 (7th Cir.1996). A party opposing summary judgment may not rest solely upon the pleadings, however, but must set forth specific allegations to demonstrate the existence of a genuine issue for trial. *Id.* at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). This must

---

2. In Illinois, BACs equal to, or in excess of, 0.10 percent create a presumption of intoxication. 625 ILCS 5/11—501(a)(1) (West 1994). *See Rice*

*v. Merchants Nat'l Bank,* 213 Ill.App.3d 790, 797, 157 Ill.Dec. 370, 375, 572 N.E.2d 439, 444 (2nd Dist.1991).

amount to more than "some metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 840 (7th Cir.1996).

Where the parties submit cross-motions for summary judgment, the court must consider the merits of each motion and, for each, draw all reasonable inferences in favor of the non-movant. *Contreras v. City of Chicago*, 920 F.Supp. 1370, 1387 (N.D.Ill.1996). Courts proceeding under this "Janus-like perspective" will sometimes find that both motions must be denied. *CSFM Corp. v. Elbert & McKee Co.*, 870 F.Supp. 819, 830 (N.D.Ill.1994); *Buttitta v. City of Chicago*, 803 F.Supp. 213, 217 (N.D.Ill.1992), *aff'd*, 9 F.3d 1198 (7th Cir.1993). On the other hand, where, as here, the facts are largely uncontested and the issues are legal ones, the parties' cross-motions present an opportunity for resolution of these issues without the need for trial.

### B. *Defendant's Denial of AD & D Benefits* [3]

#### 1. *Standard of Review*

■ As a preliminary matter, the parties dispute the appropriate standard of review to be applied in this case. Defendant contends that because the language of the Plan confers discretionary authority on the claims fiduciary, the court must give deference to its benefit determination and apply the arbitrary and capricious standard of review. (Defendant's Memorandum of Law in.support of its Motion for Summary Judgment (hereinafter "Def.'s Memo"), at 8–10.) The Supreme Court, Defendant notes, has held that actions challenging benefit determinations under § 1132(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), are reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). Where the benefit plan grants the administrator or fiduciary such discretion, "the appropriate standard of review is the deferential 'arbitrary and capricious' one." *Ramsey v. Hercules, Inc.*, 77 F.3d 199, 202 (7th Cir.1996) (citing *Firestone*, 489 U.S. at 111, 109 S.Ct. at 954).

The Plan at issue here, Defendant contends, unequivocally grants MetLife unconstrained discretionary authority over its administration and interpretation. The Plan specifically states:

> In carrying out their respective responsibilities under the Program, [MetLife has] *full discretionary authority to interpret the terms of the Program and to determine eligibility for an entitlement to Program benefits* in accordance with the terms of the Program. With respect to [its] responsibilities under the Program, [MetLife] *determines conclusively for all parties all questions arising in the administration of the Program* and any decision of [MetLife] is not subject to further review.

(Ex. A to Jt. 12(M) Statement, at) (emphasis supplied). Defendant insists that this language supports review under the arbitrary and capricious standard.

Plaintiff, on the other hand, argues that the review must be *de novo* because this case involves the interpretation of an insurance contract, not the application of ERISA. (Plaintiff's Response to Defendant Metropolitan Life's Motion for Summary Judgment (hereinafter "Pl.'s Response"), at 1.) The Plan is susceptible to multiple interpretations, Plaintiff argues, so *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302 (7th Cir.

---

**3.** Plaintiff's claim for relief under various state law causes of action, including breach of contract and vexatious delay in the payment of insurance benefits, is easily disposed of under ERISA's general provision preempting all state laws "relat[ing] to ... employee benefit plans." 29 U.S.C. § 1144(a). *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52–56, 107 S.Ct. 1549, 1555–58, 95 L.Ed.2d 39 (1987) (the civil enforcement provisions of the statute are the exclusive remedy for participants and beneficiaries seeking benefits under an ERISA-regulated plan); *Maciosek v. Blue Cross & Blue Shield United of Wisconsin*, 930 F.2d 536, 540 (7th Cir.1991) (breach of contract claim preempted); *Buehler Ltd. v. Home Life Ins. Co.*, 722 F.Supp. 1554, 1561–62 (N.D.Ill. 1989) (claims for breach of contract and vexatious refusal to pay preempted). The following discussion, therefore, relates only to Plaintiff's ERISA claims.

1992) requires the court to invoke the federal common law of contract interpretation and construe any ambiguities in favor of coverage. (Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment (hereinafter "Pl.'s Memo"), at 5–10.) According to Plaintiff, MetLife's decision must survive the scrutiny of *de novo* review rather than the less demanding standard propounded by Defendant, particularly in this case where a conflict of interest threatens the partiality of the decision-maker. (*Id.* at 2–5; Pl.'s Response, at 1–2.)

This court concludes that Plaintiff's position on this issue lacks merit. Under the federal common law of ERISA, a court must construe ambiguous terms in favor of beneficiaries; however, it will apply this rule only where the plan document does not confer discretionary authority on the plan's administrator or fiduciary. *See Morton v. Smith,* 91 F.3d 867, 871 n. 1 (7th Cir.1996). In light of the Plan's clear language, the *de novo* standard has no application here and Plaintiff's reliance on *Phillips* is misplaced; in that case the court specifically found that the exceptions regarding administrator discretion did not apply. 978 F.2d at 307. Plaintiff attempts to avoid this result by arguing that *de novo* review is appropriate where the legitimacy of Defendant's decision is undermined by its inherent conflict of interest in distributing Plan proceeds. (Pl.'s Response, at 1–2.) According to Plaintiff, MetLife could not have fairly considered her benefit claim because its interest in retaining funds and maximizing profits creates an improper incentive to avoid paying Plan benefits. (*Id.*)

Where a fiduciary with discretionary authority has a conflict of interest, that conflict "must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone,* 489 U.S. at 115, 109 S.Ct. at 957 (citation omitted); *Chalmers v. Quaker Oats Co.,* 61 F.3d 1340, 1344 (7th Cir.1995) (the "impartiality of the decisionmaking body" is a factor to be considered in reviewing a fiduciary's determination of benefits). Although the court recognizes MetLife's conflict in acting as both trustee and insurer of the Plan, such conflict is insufficient to undermine its benefit decision absent at least some evidence that Defendant was in fact motivated by this bias. *See Chalmers,* 61 F.3d at 1344 ("the impact on a company's welfare of granting or denying benefits under a plan will not be sufficiently significant as to threaten the [fiduciary's] partiality"). Plaintiff has presented no evidence of any impermissible motive in this case.[4] Even if she did, moreover, Plaintiff would not be entitled to *de novo* review; rather, the court would merely expand the scope of its "arbitrary and capricious" analysis. *See Donato,* 19 F.3d at 380 n. 3 ("the arbitrary and capricious standard of review is a sliding scale standard that should be more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is") (quoting *Van Boxel v. Journal Co. Employees' Pension Trust,* 836 F.2d 1048, 1052 (7th Cir.1987)).

The arbitrary and capricious standard is the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan. *Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan,* 102 F.3d 1435, 1438 (7th Cir.1996) (citing *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985)); *Morton,* 91 F.3d at 871 n. 1 ("[d]eferential review does not involve a construction of the terms of the plan; it involves a more abstract inquiry—the construction of someone else's construction"). In order to find that MetLife's decision was arbitrary and capricious, the court must determine that it was "downright unreasonable." *Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 380 (7th Cir.1994). The decision need not be the only conceivable interpretation of

---

4. The court notes that MetLife's Group Life Claims Department distributes approximately $2 billion in claim benefits each year. (Metropolitan Life Insurance Company's Local 12(N) Statement of Additional Material Facts as to Which there is no Genuine Issue (hereinafter "Def.'s 12(N) Statement") ¶ 4.) In comparison to the total payout of death benefits in any given year, Plaintiff's $42,000 claim appears unlikely to have prompted MetLife's decision to deny payment. *See Chalmers,* 61 F.3d at 1344 (plan administrator did not act under a conflict of interest and the potential payout of $240,000 played an insignificant role in the decision to deny benefits where this amount "paled in comparison" to the nearly $6 billion in company revenues).

the Plan "so long as [MetLife] offer[s] a reasoned explanation, based on the evidence, for a particular outcome." *Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 278–79 (7th Cir.1994) (quoting *Pokratz*, 771 F.2d at 209). If MetLife's proffered explanation is reasonable, the court should not overturn it, even where a different, yet equally reasonable, interpretation exists. *Krawczyk*, 41 F.3d at 278.

## 2. The Reasonableness of Defendant's Benefit Determination

■ In determining whether Defendant acted arbitrarily and capriciously in denying Plaintiff's accidental death benefits, the court must evaluate the reasonableness of MetLife's decision in light of the evidence and information available to the company at the time the decision was made.[5] *Krawczyk*, 41 F.3d at 279 (noting that under the deferential standard of review, "the court is ... limited to consideration of the evidence that was before the [fiduciary]") (citing *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 900 F.2d 1138, 1141–43 (7th Cir.1990)). Despite Plaintiff's claims to the contrary, the court should conclude that Defendant did not act unreasonably in this case.

Defendant argues that the decedent's death was not an "accident" within the terms of the Plan because he was extremely intoxicated when he attempted to drive his car. (Def.'s Memo, at 10.) MetLife interpreted the term "accident" to mean "not reasonably foreseeable," and insists that this interpretation is consistent with the opinions of numerous courts. (Def.'s Memo, at 10–1 1, 13–15) (citing *Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050 (7th Cir.1991) (medical mishap is known risk of treatment so death was not accidental for benefits purposes); *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir.1990) (discussing the difficulties courts have in deciding what constitutes an accident, and finding that

death was not accidental where it was the foreseeable result of voluntary hazardous conduct)). Reports revealed that the decedent's BAC (0.252 percent) was high enough to impair the mental judgments and functional capabilities necessary to successfully operate his vehicle. (Ex. B to Jt. 12(M) Statement, at 35.) Thus, Defendant maintains, because the decedent knew or should have known that death or serious bodily injury was substantially likely to occur, his demise was reasonably foreseeable and not accidental.

In support of this claim, MetLife cites numerous articles and studies that demonstrate the dangers of drinking and driving, and points to the myriad efforts being made to curb such activity. According to Defendant, "[t]here are daily reminders in the press, television, radio, car insurance premium notices, bumper stickers, solicitations from Mothers Against Drunk Driving, among other groups, and roadside billboards." (Def.'s Memo, at 13.) Indeed, Illinois has been recognized for its efforts in working to eliminate drunk driving altogether. *See Charles v. Seigfried*, 165 Ill.2d 482, 497, 209 Ill.Dec. 226, 234, 651 N.E.2d 154, 162 (1995). The decedent voluntarily consumed an inordinate amount of alcohol and then got behind the wheel of his car. It can be no surprise, Defendant maintains, that the result of such action was death. (Def.'s Memo, at 15.)

Plaintiff challenges Defendant's conclusion as speculative, noting that the actual cause of the car crash is unknown. (Pl.'s Response, at 4.) For example, the decedent could have experienced mechanical problems or been forced off the road by another vehicle. (Pl.'s Memo, at 7.) In addition, Plaintiff insists that the death was not foreseeable because the odds that the decedent would actually be involved in an accident were less than 50 percent. Defendant itself asserts that driving with a 0.252 percent BAC translates into a 40 percent chance of crashing. (Def.'s

**5.** The evidence available to Defendant at the time it evaluated Plaintiff's claim included the death certificate, the accident report, and the coroner's inquest. Defendant attempts to argue that the decedent's death did not result "independently of all other causes" (the second clause of the insuring language). Significantly, however, Defendant did not rely on this rationale in denying Plaintiff's claim. (Ex. B to Jt. 12(M) Statement, at 2, 26.) The court must determine whether MetLife's decision was reasonable when made; accordingly, it will not consider new grounds at the summary judgment stage.

Memo, at 12.) Therefore, Plaintiff argues, the decedent had a 60 percent chance of arriving home safely and his demise was unforeseeable. (Pl.'s Response, at 4.) Plaintiff contends, further, that if knowledge of the dangers of drunk driving is so pervasive, Defendant should have explicitly excluded such accidents from coverage. (*Id.* at 2–3; Pl.'s Memo, at 10–14.) Because it did not do so, MetLife should be barred from contending that the decedent's death was anything but accidental.

Plaintiff's arguments on this issue are unpersuasive. There is no evidence that the crash occurred for any reason other than the decedent's impaired condition due to excessive alcohol consumption. Furthermore, Plaintiff's assertion that MetLife could have avoided this problem by explicitly excluding drunk driving accidents from policy coverage does not address the reasonableness of Defendant's conclusion that the decedent's death was not "accidental." Plaintiff devotes several pages to a discussion of the process by which Defendant denied her claim. She notes that the original claims adjuster recommended paying the AD & D benefits, but that his supervisor searched for ways to avoid payment. (Pl.'s Response, at 8–9.) Plaintiff cites no factual authority for these allegations, however. The record actually reflects that the original adjuster "suggest[ed]" paying the benefits and requested advice on the matter ("Please advise"). (Ex. B to Jt. 12(M) Statement, at 30.) Far from being a final determination that Plaintiff should be paid, this language demonstrates that the company anticipated further review of the claim. The court finds no evidence that Defendant's methods of review were improper.

The court should uphold MetLife's interpretation of "accident" because it was neither arbitrary nor capricious. Indeed, several courts have recognized that the intentional acts of an insured are not accidental where the resultant harm can be reasonably foreseen. *See, e.g., Fowler v. Metropolitan Life Ins. Co.,* 938 F.Supp. 476, 480 (W.D.Tenn.

1996) (death was foreseeable consequence of driving while intoxicated and, thus, not accidental); *Weisenhorn v. Transamerica Occidental Life Ins. Co.,* 769 F.Supp. 302, 306 (D.Minn.1991) (death is foreseeable risk of drunk driving). *Cf. Santaella v. Metropolitan Life Ins. Co.,* No. 95 C 4571, 1996 WL 167336, at *7–9 (N.D.Ill. Apr.5, 1996) (rejecting the plaintiff's proposed definition of accident as "unintentional" and finding that death from drug overdose was not accidental where a reasonable person would expect such a result from continued drug abuse); *McLain v. Metropolitan Life Ins. Co.,* 820 F.Supp. 169, 178 (D.N.J.1993) (insurance company did not act arbitrarily or capriciously in determining that death caused by cocaine use was not accidental because the result could be reasonably expected).

*Morton v. Smith* is instructive on this issue. In that case, the plaintiff broke his leg after climbing onto the roof of a bar (in an intoxicated state) and jumping down eight feet to the sidewalk below. 91 F.3d at 869. The insurance company denied his claim for benefits, arguing that his injury was "intentionally self-inflicted." *Id.* The Seventh Circuit held that the company's decision was reasonable, explaining that an intentionally self-inflicted injury is non-accidental, and that "an injury is not an accident if it is the natural and probable consequence of an intentional act." *Id.* at 872. In this case, Defendant concluded that death by automobile accident was a natural and probable consequence of the decedent's having consumed more than two and a half times the legal amount of liquor. (Ex. B to Jt. 12(M) Statement, at 35.) This court cannot say that MetLife's interpretation of the Plan was so implausible as to render its benefit determination unreasonable. Although the court recognizes other conceivable interpretations of "accident," *see, e.g., Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1097 (7th Cir.1994) (noting that "accidentally is commonly defined as unexpected or unintentional"), Defendant's interpretation is certainly one plausible construction of that term and should not be overturned.[6] *See Krawczyk,* 41 F.3d at 278.

---

6. In light of this resolution, the court need not address whether the decedent's injury was "purposely self-inflicted" within the meaning of the Plan. If the court did reach this issue, however, Defendant would still prevail. The term "injury" is commonly defined as damage to a person.

### CONCLUSION

MetLife's decision to deny Plaintiff's claim for accidental death benefits was reasonable and should be upheld under the arbitrary and capricious standard of review. Defendant reasonably concluded that the term "accident" means "not foreseeable" and that death is a "reasonably foreseeable" result of driving while intoxicated. Thus, Plaintiff's motion for summary judgment should be denied, and Defendant's motion should be granted.[7]

*Webster's Ninth New Collegiate Dictionary* (1990). ERISA case law supports the conclusion that MetLife did not act arbitrarily or capriciously in deciding that the mental and physical impairments caused by alcohol consumption are injuries that were "purposely self-inflicted," and that the decedent's death was caused by these infirmities. *See Fowler,* 938 F.Supp. at 480 (it was reasonable for the plan fiduciary to find that the employee's death was at least partially intentionally self-inflicted where he was legally intoxicated at the time he drove his car); *Holsinger v. New England Mutual Life Ins. Co.,* 765 F.Supp. 1279, 1282 (E.D.Mich.1991) (effects of codeine on bodily functions are "injuries purposely self-inflicted"); *McLain,* 820 F.Supp. at 178–79 (effect of codeine use on body was "purposely self-inflicted injury").

Plaintiff argues that absent Seventh Circuit authority interpreting this phrase, the court must turn to Illinois decisions that have found that injuries resulting from alcohol consumption or drug use are not "self-inflicted." (Pl.'s Response, at 11.) Because ERISA preempts state law, however, fiduciaries' discretion is not "limited to obedience to Illinois law." *Morton,* 91 F.3d at 871.

7. The court notes that Plaintiff's claim for exemplary and punitive damages under ERISA is improper because such damages are not available under the statute. *Tomczyk v. Blue Cross & Blue Shield United of Wisconsin,* 951 F.2d 771, 777 n. 3 (7th Cir.1991) (punitive damages are not recoverable under ERISA).