Raymond H. SCHNEIDER and
Dean Schneider, Plaintiffs,

v.

WISCONSIN UFCW UNIONS AND
EMPLOYERS HEALTH
PLAN, Defendant.

No. CIV.A. 97–C–144.

United States District Court,
E.D. Wisconsin.

Dec. 4, 1997.

Lee J. Geronime, Michael Best & Friedrich, Milwaukee, WI, for Plaintiffs.

Kathleen S. Donius, Reinhart, Boerner, VanDeuren, Norris & Rieselbach, Milwaukee, WI, for Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS JUDGMENT AS TO LIABILITY

REYNOLDS, District Judge.

Plaintiff Raymond H. Schneider ("Raymond") is plaintiff Dean Schneider's ("Dean;" collectively, "the Schneiders") father. The Schneiders bring this suit under the Employee Retirement Income Security Act ("ERISA") seeking coverage for certain med-

ical expenses under the defendant Wisconsin UFCW Unions and Employers Health Plan ("Plan"). Currently before the court is the Plan's motion for summary judgment, arguing that the claimed expenses are excluded from coverage. The court denies this motion, finding the Plan administrator's decision to deny benefits arbitrary and capricious.

## SUMMARY JUDGMENT STANDARD

The court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of asserting the absence of any dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Material facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

To avoid summary judgment, however, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Even if some facts are in dispute, entry of summary judgment is in order if the movant either establishes uncontroverted facts entitling it to summary judgment or demonstrates that the non-moving party has failed to make a sufficient showing on an essential element of its case with respect to which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

To determine whether material facts are disputed so as to preclude the entry of summary judgment, the court relies on the parties' proposed findings of fact. *See generally* Local Rule 6.05 (E.D.Wis.). The moving party must submit detailed factual propositions in accordance with Local Rule 6.05(a). The non-moving party must specifically respond to movant's proposed findings; if findings are disputed, evidentiary support for the dispute must be cited. Local Rule 6.05(b)(1). A responding party may also submit additional factual propositions. Local Rule 6.05(b)(2). When there is no objection to proposed findings of fact, the court accepts them as true. Local Rule 6.05(d). At its core, this is the stage of the litigation in which parties are required to demonstrate that they have sufficient relevant evidence to offer to allow a jury to apply the law and find in their favor.

## FACTUAL BACKGROUND

The Plan is a self-funded multi-employer health and welfare plan maintained pursuant to ERISA. Dean Schneider was covered by the Plan at all times relevant to this lawsuit. On March 18, 1989, Dean collapsed in his dormitory at Winona State University in Minnesota, as a result of a malfunction of blood vessels in his brain. At the Mayo Clinic, surgeons removed Dean's left cerebellum. This emergency surgery left Dean with a series of physical problems, including and most relevant here, the inability to swallow. Dean spent five weeks recovering at the Mayo Clinic and another four or five weeks receiving rehabilitation at Sacred Heart Hospital in Milwaukee, Wisconsin.

As a result of Dean's inability to swallow, a doctor at Sacred Heart prescribed enteral nutritional therapy ("ENT") by which a nutrient substance would be pumped directly into Dean's intestines with the use of various equipment. The prescription provided for the nutrient substance and the equipment necessary for its delivery. From 1989 until some point in 1995, Dean required the ENT. During this period, Dean progressed from having the nutrient pumped into his intestines by machine, to injection by syringe, and finally to the use of a feeding tube introduced through his mouth and down his throat. In the first months, Dean received the therapy on an outpatient basis. Eventually, he was able to administer the therapy at home.

At issue in this lawsuit is whether the costs of Dean's ENT are covered by the Plan.

During the course of the ENT, Dean obtained all the necessary equipment and nutritional substance from R & J Medical Supply ("R & J"). R & J assumed responsibility for submitting claims to the Plan for these ex-

penses. While the Plan submits a detailed history of various claims submissions, these facts are not relevant to the basic issue in this case, which is whether the Plan covers the costs associated with the ENT.

The Plan administrator denied coverage based on section 7.4(a) of the Plan (later renumbered 6.4(a)):

Benefits are not payable for [sic]:

unless coverage is specifically provided in the Plan, routine care and other treatments or procedures not Medically Necessary, including but not limited to:

(i) confinement, treatment, or services related to the restoration of fertility or the promotion of conception . . . ,

(ii) bedwetting correction devices,

(iii) food, food substitutes or supplements or vitamins outside of a Hospital,

(iv) sex changes,

(v) sexual inadequacy treatments, and

(vi) sexual sterilization reversals;

Section 1.16 of the plan defines "Necessary or Medically Necessary:"

"Necessary or medically necessary" means only those services, treatments, or supplies provided by a Hospital or Physician that are required in the judgment of the Trustees to identify or treat a Person's illness or injury and which are:

(a) consistent with the symptoms or diagnosis and treatment of the Person's condition, disease, ailment, or injury;

(b) appropriate according to the standards of good medical practice;

(c) not solely for the convenience of the a Person, Physician, or Hospital; and

(d) the most appropriate which can be safely provided to the Person.

It is undisputed that Dean would not have survived without the ENT.

### STANDARD OF REVIEW OF THE PLAN ADMINISTRATOR'S DENIAL OF BENEFITS

■ A denial of insurance benefits, challenged, as here, under 29 U.S.C. § 1132(a)(1)(B), is generally reviewed de novo by a district court. However, when an ERISA covered plan accords the plan's administrators with discretionary power to determine eligibility for coverage, a court may reverse the administrator's decision only upon finding it arbitrary and capricious. *Swaback v. American Info. Tech. Corp.,* 103 F.3d 535 (7th Cir.1996). A decision is not arbitrary and capricious if it is supported by a rational explanation based on the facts. *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.2d 1138 (7th Cir.1990). However, a plan administrator's decision is arbitrary and capricious when it conflicts with the plain meaning of the plan's text. *Swaback,* 103 F.3d at 540.

### DISCUSSION

■ As section 7.4(a) makes clear, the Plan does not cover expenses not otherwise provided for, unless those expenses are medically necessary. Section 7.4(a)(i)–(vi) lists examples of expenses that may be unnecessary within the meaning of the Plan. The fact that section 7.4(a)(iii) includes "food, food substitutes or supplements or vitamins outside of a Hospital," is irrelevant in this case because "medically necessary" is separately defined by section 1.16. Therefore, if Dean's ENT was "medically necessary," the plain language of the Plan affords coverage.

■ While ERISA permits a health plan to delegate authority to an administrator to interpret a plan's language, and in such cases limits a court to reviewing for arbitrariness and capriciousness—an administrator is not free to give ordinary words bizarre or obscure interpretations. While an administrator is free to choose from among reasonable interpretations, he may not select an unreasonable one. *Morton v. Smith,* 91 F.3d 867 (7th Cir.1996). In the case at bar, the defendant demonstrates that the administrator's decision was arbitrary and capricious because the defendant is not able to explain the decision without torturing the Plan's language.

For example, the defendants begin with the somewhat startling premise that "the fact that anyone will die without a source of nutrition does not make food or food substitutes [defendant's characterization of Dean's ENT] 'Medically Necessary' under the Plan."

(Def.'s Sep. 16, 1996 Br. at 13.) Indeed, the defendant attempts to characterize the ENT merely as an alternative to "the normal types of food many Americans enjoy, such as hamburgers, pizzas, and seafood," (Def.'s Oct. 30, 1997 Reply Br. at 1), except that Dean's "food" was, in effect, "put in a blender." As the court understands this argument, the defendant asserts that a medical procedure that provides for a biologic function that a healthy human body generally provides for itself cannot be considered medically necessary. Under the facts of this case, where the insured is physically incapable of swallowing, this argument is unpersuasive.

The defendant further contends that the ENT was not used to "identify or treat" Dean's injury, the malfunction of blood vessels in his brain, within the meaning of section 1.16. This assertion fails first because the injury at issue could well be said to be not the brain injury but Dean's inability to ingest food without medical assistance. Surely, if during medically necessary surgery, a patient's heart stopped beating, the plan would not call resuscitation unnecessary.

Second, the Plan's application of the "identify or treat" requirement is facially unreasonable because it would create a river of absurd results: For example, no surgical anesthesia "treats or identifies" the problem that required surgery; in fact, while an initial surgical incision is probably a form of "treatment," suturing the patient's incision at the end of surgery neither treats nor identifies the problem requiring surgery. Of the infinite analogies, the best perhaps is that of a respirator which does not identify or treat a problem but, in the Plan's apparent view, would merely be an alternative means of meeting a person's normal need for oxygen. *See Gallo v. Amoco Corp.*, 102 F.3d 918 (7th Cir.1996) ("the structure of the plan or sheer common sense or inconsistent interpretations [can] provide the court with a handle for pronouncing the administrator's determination arbitrary and capricious").

Finally, the Plan argues that Dean's ENT was not "provided by a hospital or physician" within the meaning of section 1.16. First, this assertion completely ignores Dr. Origene's prescription for the ENT, annexed to the plaintiffs' October 15, 1997 brief as exhibit B. Second, as with the Plan's application of the "identify and treat" language, the Plan would appear to require a medical doctor to be present in the room anytime a covered expense was incurred. This may explain why the defendant relies more heavily on the "outside the hospital" illustrative exclusion embodied in section 7.4(a)(iii). However, as noted above, this language becomes irrelevant on finding the ENT "medically necessary."

The undisputed facts demonstrate that Dr. Origene's prescription for ENT served to treat Dean's injury (however it be characterized). The defendant concedes the other requirements of medical necessity. The defendant maintains its challenge only by deviating from the Plan's plain language in a manner that would create patently absurd results. Therefore, the Plan's denial of coverage for dean's ENT was arbitrary and capricious.

## SUMMARY JUDGMENT ON LIABILITY

As established above, no material factual disputes exist, and the Plan's plain language affords coverage to the Schneiders. A court may grant summary judgment *sua sponte* where no factual disputes remain. *Goldstein v. Fidelity and Guar. Ins. Underwriters, Inc.*, 86 F.3d 749 (7th Cir.1996). Here, no issue of liability remains; the Schneiders are entitled to coverage under the plain language of the Plan.

For this reason, the defendant Wisconsin UFCW Unions and Employers Health Plan's motion for summary judgment is **DENIED.**

Summary judgment for the plaintiffs, Raymond H. Schneider and Dean Schneider is **GRANTED** as to liability.