METROPOLITAN LIFE INSURANCE
COMPANY, Plaintiff,

v.

David POTTER, Defendant.

No. Civ.A. 94–4932.

United States District Court,
D. New Jersey.

Jan. 29, 1998.

B. John Pendleton, McCarter & English, Newark, NJ, for Plaintiff.

Irwin P. Burzynski, Millburn, NJ, for Defendant.

## OPINION

LIFLAND, District Judge.

Presently before the Court are cross-motions for summary judgment regarding defendant's entitlement to insurance benefits under an ERISA plan underwritten by plaintiff. For the reasons set forth herein, both motions will be denied.

### BACKGROUND

On October 17, 1994, plaintiff, Metropolitan Life Insurance Company (hereinafter "plaintiff"), commenced this action against defendant, David Potter (hereinafter "defendant") seeking declaratory relief and restitution of an alleged overpayment of benefits paid to defendant pursuant to the AT & T Life Insurance Program for Management Employees, a group employee welfare benefit plan (hereinafter the "plan"), following the death of defendant's wife, Jacqueline Jolly-Potter (hereinafter "Mrs. Potter" or the "decedent"). Unless otherwise noted, the following facts are undisputed and form the basis of the instant dispute.

At all times relevant to this action, defendant and the decedent were employed by AT & T and participated in the plan. The plan is experience-rated, thus the premiums charged to AT & T can be adjusted every year based on the claims incurred during the previous year. Affidavit of Robert W. Sheerin (herein "Sheerin Aff."), at ¶ 4. Plaintiff is the claims fiduciary and insurer under the plan. As of October 1993, defendant had coverage for $100,000 of dependent accidental loss insurance (hereinafter "dependent AD & D benefits"). At the time of her death, decedent had coverage for $44,000 of life insurance, an amount equal to her annual salary, and $132,000 of accidental loss insurance (hereinafter "AD & D benefits"), an amount equal to three times her annual salary. See Affidavit of Gary Dygert (hereinafter "Dygert Aff."), at ¶ 3. Decedent had designated her husband, the defendant, as her primary beneficiary under the plan.

Under the plan, a decedent's beneficiary is entitled to life insurance proceeds no matter how the insured died and independent of entitlement to AD & D or dependent AD &

D benefits. Dygert Aff., at ¶ 4. Thus, under no circumstance would a participant or beneficiary entitled to AD & D benefits receive AD & D benefits without also receiving basic life insurance benefits. Dygert Aff., at ¶¶ 5, 8.

The parties dispute which of the following three documents governs defendant's current claims: the Summary Plan Description (hereinafter the "SPD"); Policy No. 18000–G (AD & D Benefits); and Policy No. 26600–G (Dependent AD & D Benefits).

*The SPD*

The SPD, by its very terms, provides a "brief overview" of plan benefits and explains the plan's highlights. *See* Potter Aff., Ex. A(SPD); Gacek Aff., Ex. A(SPD). The SPD explains that life and AD & D benefits are paid independently of each other. With regard to AD & D coverage, the SPD provides that "[a]ccidental loss insurance pays benefits if you die ... solely as the result of an accident..." Potter Aff., Ex. A, at 150; Gacek Aff., Ex. A, at 150. The SPD also sets forth a list of exclusions under the heading "What's Not Covered." In that provision, the SPD states that accidental loss insurance does not pay benefits for losses or death caused by, *inter alia,* "[p]urposely self-inflicted injury." Potter Aff., Ex. A., at 151. The SPD contains no explicit language excluding payment of AD & D benefits for any type of alcohol-related death, or any exclusion for engaging in illegal activities. With regard to dependent AD & D coverage, the SPD states that "[t]he Dependent Accidental Loss Insurance Plan" allows you to cover your dependents for accidental death and the same losses described under [the section governing AD & D benefits]. Potter Aff., Ex. A, at 151.

The SPD further states that:

[t]his summary plan description summarizes the key features of your life insurance program. You can find complete details in the official Plan documents that legally govern the operation of the Plan. All statements made in this summary plan description are subject to the provisions and terms of those documents. Plan documents include the official Plan text, insurance contracts, the annual report and other documents or reports maintained by the Plan....

.... The insurance carrier shall serve as the final review committee under the Plan and shall have the sole and complete discretionary authority to determine conclusively for all parties, and in accordance with the terms of the documents or instruments governing the Plan, any and all questions arising from administration of the Plan and interpretation of all Plan provisions, determination all questions relating to ... eligibility for benefits, determination of all relevant facts, amount and type of benefits payable to any participant, spouse or beneficiary, and construction of all terms of the Plan.... [D]ecisions by the insurance carrier ... shall be conclusive and binding on all parties and not subject to further review.

Potter Aff., Ex. A, at 163, 167.

*Policy No. 18000–G:*

Group Policy No. 18000–G provides, *inter alia,* the specifics of life and accidental death coverage. With regard to life insurance benefits, the Insuring Clause provides that the insurance company will pay benefits upon receipt of "satisfactory proof" of the insured's death. Burzynski Aff., Ex. M Policy No. 18000–G, at 15. With regard to AD & D benefits, the Insuring Clause provides:

Upon receipt of notice and satisfactory proof, as required herein, that any Employee, while insured hereunder for Accidental Death of or Dismemberment Insurance, shall have sustained accidental bodily injuries, and within ninety days thereafter shall have suffered any of the losses specified [herein] as a result of such bodily injuries independently of all other causes, the Insurance Company shall pay, subject to the terms and limitations hereof, the amount of insurance specified for such loss ... provided, however, that in no case shall any payment be made for death or any other loss which is ...

(4) caused by or resulting from ... intentionally self-inflicted injury.

All Accidental Death or Dismemberment Insurance benefits will be paid immediately after receipt of due proof.

Burzynski Aff., Ex. M, at 17–18.

On December 2, 1993, pursuant to the provisions of Policy No. 18000–G, plaintiff amended the policy (hereinafter "amendment number 7"). *See* Burzynski Aff., Ex. Q (amendment number 7). The amendment purported to terminate Policy No. 18000–G, effective October 31, 1992, and to discontinue all employee coverage thereunder. The amendment further provided that the insurance discontinued under the amendment would be replaced by similar coverage under Group Policy No. 35083–G. In the provision governing AD & D benefits, Policy No. 35083–G entitles a claimant to benefits only where "the accident is the sole cause of the injury." a determination to be made by plaintiff upon receipt of proof that is "satisfactory to [MetLife]." Second Suppl. Burzynski Aff., Ex. C.

Though Policy No. 35083–G was not executed until June 25, 1997, AT & T identified Policy No. 35083–G in its 1993 and 1994 federal tax returns as the governing insurance policy for AD & D benefits. *See* Second Supplemental Affidavit of Irwin P. Burzynski, (hereinafter "Second Suppl. Burzynski Aff."), Ex. C (Policy No. 35083–G); Burzynski Aff., Ex. S (1993 and 1994 Annual Return/Report of Employee Benefit Plan). Despite the purported termination of Policy No. 18000–G and the discontinuation of coverage thereunder, between the date of amendment number 7 and the execution of Policy No. 35083–G, plaintiff continued to amend Policy No. 18000–G several times through August 1995. *See* Burzynski Aff., Ex. T (amendments made in 1994 and 1995). Notwithstanding the purported discontinuance of Policy No. 18000–G, plan premiums continue to be calculated in accordance with the formulae set forth in the relevant sections of the policy. Sheerin Aff., at ¶ 2.

*Policy No. 26600–G:*

Group Policy No. 26600–G provides, *inter alia,* the specifics of dependent insurance. *See* Burzynski Aff., Ex. O (Policy No. 26600–G). Section 14 of the policy states that "[t]his Policy and the application of the Em-

ployee constitute the entire contract between the parties." Like the SPD, the benefits booklet annexed as an exhibit to, and incorporated by reference in, Policy No. 26600–G states that the benefits booklet contains only the highlights of the plan, and that plan details are "contained in the master Dependent Group Life Insurance contract issued by Metropolitan Life Insurance Company which legally governs the operation of the plan." Burzynski Aff., Ex. P (Benefits Booklet), at 5. In the section entitled "Requesting a Review of Claims Denied in Whole or in Part," the booklet states that "the Metropolitan Life Insurance Company has the exclusive right to interpret the provisions of the Plan, so its decision is conclusive and binding." Burzynski Aff., Ex. P, at 6. Although Policy No. 26600–G does not explicitly state that it governs claims for dependent AD & D benefits, the dependent claim form for Policy No. 26600–G has a space for AD & D claims. *See* Burzynski Aff., Ex. V (Dependent Life Insurance Claim Statement Group Policy No. 26600–G) An amendment to the SPD, effective January 1, 1993, incorporates by reference Policy No. 26600–G (referred to in other AT & T documents as "Number 528"). AT & T's 1993 and 1994 federal tax returns for the plan identify Policy No. 26600–G as the contract or identification number. *See* Burzynski Aff., Ex. X (1993 and 1994 Annual Return/Report of Employee Benefit Plan).

*The Collision*

On October 6, 1993, Mrs. Potter died from injuries sustained when she struck a utility pole while driving her vehicle on the shoulder of a roadway. No other vehicles were involved in the collision. At the time of her death, the decedent was wearing a seatbelt. The sole eyewitness to the incident reported that Mrs. Potter appeared to be driving in a normal manner and seated in a normal driving position moments before the collision. The police report of the scene shows that the decedent veered off the roadway and struck a utility pole on the shoulder located approximately four feet from the edge of the road when she failed to negotiate a left hand curve in the road. *See* Burzynski Aff., at Ex. C (motor vehicle accident description and diagram); Affidavit of Cindy Gacek (hereinafter

"Gacek Aff."), at ¶ 7 and Ex. B (motor vehicle accident description and diagram). It appears that decedent's vehicle may have struck a pothole, which may have redirected the vehicle toward the pole. *See* Burzynski Affidavit (hereinafter "Burzynski Aff."), at Ex. 1 (Report of defendant's expert, Dwight H. McLean, P.E.).

The police report also states that the decedent had an odor of alcohol on her breath. *See* Burzynski Aff., Ex. C; Gacek Aff., Ex. B. A preliminary blood alcohol content sample taken by hospital staff showed a blood alcohol content of .289%. Burzynski Aff., at Ex. C; Gacek Aff., at ¶ 7 and Ex. C. The police report states that the collision was considered alcohol-related due to the preliminary blood alcohol reading. The autopsy revealed "a positive toxicological finding of ethyl alcohol" in decedent's blood. *See* Gacek Aff., at Ex. C (autopsy report). The toxicology report states that the decedent had a premortem blood alcohol content of .314% and a postmortem blood alcohol content of .250%. *See* Gacek Aff., Ex. D (toxicology report). The Medical Examiner's Office stated that the cause of death was a lacerated heart and liver with extensive chest cavity bleeding. *See* Burzynski Aff., at Ex. C. The autopsy report declared the cause of death "accidental." Gacek Aff., at Ex. C.

On October 21, 1993, defendant submitted separate Claimant's Statements for accidental death benefits (hereinafter "AD & D benefits") under the decedent's participation in the plan, and for dependent AD & D benefits under his own participation. Plaintiff's claims file contains a dependent life insurance claim statement in which AT & T's benefits supervisor certified that defendant was eligible for $100,000 in dependent AD & D benefits. *See* Burzynski Aff., at Ex. G. Though defendant's claims under his wife's policy did not specify the amount defendant sought to recover, Plaintiff's Death Claim Worksheet sets forth defendant's claim for $44,000 in life insurance benefits and $132,000 in AD & D benefits. In the section marked "Action" following each of these two claims, the letter "A" appears, apparently indicating approval of defendant's claims. *See* Burzynski Aff., at Ex. H (Plaintiff's Death Claim Worksheet). In early November 1993, plaintiff paid defendant $132,000. *See* Gacek Aff., Ex. E (MetLife Statement of Claim). Thereafter, in an internal company memorandum dated December 2, 1993, plaintiff stated that decedent "was in a car accident, blood alcohol of .289%. No plan exclusion for alcohol." Burzynski Aff., at Ex C.

By letter dated May 24, 1994, plaintiff denied defendant's AD & D and dependent AD & D claims, stating that decedent's driving while intoxicated made her subsequent death reasonably foreseeable and expected. Plaintiff stated:

> Common sense, as well, as the law, dictate that a death resulting from one's own drunk driving is not an "accident" for the purposes of collecting additional benefits under an ERISA plan's Accidental Loss Insurance. The term "accident" is universally construed as meaning an event which is "fortuitous, unexpected or unanticipated, which cannot reasonably be foreseen." The dangers of drunk driving … are so widely known … and publicized that they cannot innocently be ignored…. [D]riving while intoxicated is too great a risk to be tolerated without penalty. In today's world, people who drink and drive must be charged with responsibility for their own acts. Serious injury or death resulting from drunk driving is to be expected; either is a result which reasonably can be foreseen. One's own injury or death resulting from driving while intoxicated is, therefore, in the true sense of the word no "accident" at all…. The foreseeability of such injury or death makes driving while intoxicated similar to other violent or potentially harmful acts … acts which, by their nature, significantly increase the risk that an injury will occur … People who drive (which is already potentially dangerous) while intoxicated (thus significantly elevating the risk that harm will occur) necessarily take the chance which invites their own injury or death. Injury or death resulting from such acts is not deemed an "accident" or an "accidental loss" for the purposes of obtaining Accidental Loss Insurance Benefits. Hence, assuming the "accident" which caused [Mrs. Potter's] death was her collision with the utility pole

(which resulted in her fatal injuries), her death was not "solely the result" of the collision as the Plan requires. Rather, [Mrs. Potter's] injuries and death were the foreseeable result of her driving while intoxicated.

Affidavit of David Potter in Support of Defendant's Motion for Partial Summary Judgment (hereinafter "Potter Aff."), Ex. H. at 2.

Defendant appealed plaintiff's denial. Plaintiff responded by filing the instant action. In its amended complaint, plaintiff asserted, for the first time, that it should have paid defendant only $44,000 in life insurance benefits, and that it is entitled to recoup the $88,000 alleged overpayment.

*The Instant Motions*

On August 19, 1997, defendant filed the instant motion for partial summary judgment awarding him $232,000 in AD & D benefits, plus interest, costs and fees. On August 20, 1997, plaintiff filed the instant cross-motion for summary judgment: declaring that AD & D benefits are not payable under the plan where the participant's death is the result of the participant's driving while intoxicated; declaring that AD & D benefits are not payable under the plan where the covered dependent's death is a result of the dependent's own driving while intoxicated; declaring that plaintiff's denial of defendant's AD & D claims was proper; and awarding plaintiff $88,000, representing the overpayment, plus interest, costs and fees.

*STANDARD OF REVIEW*

Summary judgment eliminates unfounded claims without recourse to a costly and lengthy trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R .Civ.P.* 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *See Celotex,* 477 U.S. at 323. A litigant may discharge this burden by exposing the "absence

of evidence to support the nonmoving party's case." *Id.* at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring the nonmoving party such that a reasonable jury could return a verdict in that party's favor. *See id.* at 249.

*DISCUSSION*

Any plan "established or maintained by an employer ... for the purpose of providing for its participant or their beneficiaries, through the purchase of insurance or otherwise ... benefits in the event of ... accident ... [or] death" is an "employee welfare benefit plan" within the meaning and scope of ERISA. *See* 29 U.S.C. § 1002(1). ERISA authorizes plan participants to bring an action to recover "benefits due ... under the terms of the Plan." 29 U.S.C. § 1132(a)(1)(B). Under ERISA, any claim which "relates to" an ERISA plan is preempted by ERISA. 29 U.S.C. § 1144(a). In the instant case, the AT & T Life Insurance Program for Management Employees was established by AT & T, defendant and decedent's employer, and provides life insurance and accidental loss benefits for employees, their beneficiaries and their dependents. The plan is therefore an ERISA plan. Because defendant's AD & D claim relates to an ERISA plan, defendant must find his remedy within ERISA, or not at all.

 Where, as here, a claimant challenges a benefit determination made by the plan administrator, the appropriate standard

of the Court's review turns on the language of the plan itself. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits ... is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." If the plan provides the administrator with discretionary authority to determine a participant's eligibility for benefits, the arbitrary and capricious standard applies. *Id.* at 111; *see also Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 114 (3d Cir.1994); *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir.1993). The trust instrument need not expressly grant discretionary authority; rather, such discretion may be implied from the terms of the plan. *See Hullett*, 38 F.3d at 114; *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1256 (3d Cir.1993); *Luby v. Teamsters Health Welfare & Pension Trust Funds*, 944 F.2d 1176, 1181 (3d Cir.1991) (holding no "magic words" such as discretion need be used to accord discretion).

Here, the parties dispute: (1) which instrument governs the terms of defendant's claim; (2) the appropriate standard of review for assessing plaintiff's denial of AD & D benefits and (3) the meaning of the language governing claims of accidental loss.

■ Plaintiff argues that Policies No. 18000–G and 26600–G were terminated by amendment and that the SPD governs defendant's claims. Plaintiff argues that the SPD gives plaintiff discretion to review claims and that any denial thereof is subject to an arbitrary and capricious standard of review. Plaintiff contends that its denial of AD & D benefits was not unreasonable, arbitrary or capricious because the decedent's death was not "solely the result of an accident," which the SPD requires for an award of AD & D benefits. Alternatively, plaintiff argues that regardless of which document governs, the language of the policies and the SPD are functionally equivalent in their grant of discretion and in requiring an accident to be the singular cause of death. Plaintiff therefore argues that its denial of benefits was proper

under either instrument or standard of review.

Defendant argues that plaintiff cannot retroactively terminate the insurance policies and that Policies No. 18000–G and 26600–G therefore govern his claims for AD & D benefits. Defendant argues that plaintiff's denial of AD & D benefits is subject to *de novo* review by this Court because the policies do not grant plaintiff discretion in reviewing claims. Defendant also argues that the language of the policies and the SPD are not functionally equivalent. Defendant contends that the policy language requiring death as a result of accidental injuries independent of all other causes means that no intervening injuries between the accident and death can contribute to death; while the SPD language requiring that death occur "solely" as the result of an accident does not concern intervening injuries. Defendant also contends that this Court should order plaintiff to pay AD & D benefits because the plan does not contain an exclusion for alcohol-related incidents and, regardless of decedent's intoxication, the decedent's death was the result of accidental bodily injuries sustained in a motor vehicle collision when decedent's car veered off a dangerous roadway. Alternatively, defendant argues that even if *de novo* review is not required a standard less deferential than arbitrary and capricious is mandated because plaintiff's dual role as plan insurer and claims fiduciary creates a conflict of interest. Defendant further argues that even under an arbitrary and capricious standard of review, plaintiff's denial was unreasonable, arbitrary and capricious because plaintiff has failed to consistently interpret the plan provisions governing AD & D benefits.

The Court need not determine which instrument governs defendant's entitlement to AD & D benefits or, more precisely, whether Policy No. 26600–G remains in effect or whether plaintiff's retroactive termination of Policy No. 18000–G was valid such that the SPD alone governs the parties' respective rights. This is so because, as plaintiff suggests, regardless of which instrument controls, (1) the language in the various instruments is functionally equivalent in requiring

an accident to be the singular cause of death and (2) under each of the three instruments plaintiff retains discretion to interpret the plan provisions.

First, as noted, the SPD provides that accidental death benefits are not payable unless the death is "solely ... the result of an accident ..." Potter Aff., Ex. A, at 150; Gacek Aff., Ex. A, at 150. Policy No. 18000-G states that AD & D benefits will be payable only where the insured sustained and died as a result of "accidental bodily injuries ... independently of all other causes...." Burzynski Aff., Ex. M, at 17. Policy No. 26600-G and the appended benefits booklet do not mention the word "accident" at all; and while the dependent life insurance claim statement for making claims under that policy clearly leaves a space for "Amount of Dependent Accidental Loss Insurance on this Dependent," the form provides no indication as to the criteria by which such claims are evaluated. *See* Burzynski Aff., Ex. V. Despite this silence, defendant appears to argue that the same criteria set forth in Policy No. 18000-G for AD & D benefits governs dependent AD & D benefits under Policy No. 26600-G, *i.e.*, that death must have been the result of "accidental bodily injuries ... independently of all other causes...."

Even assuming, *arguendo*, that the language governing claims under Policy No. 18000-G also controls claims made under Policy No. 26600-G, giving the language in the instruments its plain meaning the Court finds no articulable distinction between the policy language requiring "accidental bodily injuries ... independently of all other causes" and that of the SPD requiring that death occur "solely" as the result of an accident. The Court rejects defendant's argument that the language of the policies means something different from the language of the SPD. Whether death occurs "solely" by accident or by an accident "independently of all other causes" is semantically irrelevant because both phrases unambiguously indicate that plaintiff will not pay benefits unless an accident is the singular or exclusive cause of death.

Turning to the discretion question, the plain language of the SPD clearly and un-

equivocally confers on plaintiff the "complete discretionary authority to determine conclusively for all parties ... any and all questions arising from ... interpretation of all Plan provisions, determination of all questions relating to ... eligibility for benefits ... amount and type of benefits payable to any participant, spouse or beneficiary, and construction of all terms of the Plan ..."

Plaintiff's discretion under Policy No. 18000-G is similarly apparent. As noted, with regard to AD & D benefits, the policy insuring clause states that "[u]pon receipt of ... satisfactory proof ... that any Employee, while insured hereunder for [AD & D] Insurance, shall have sustained accidental bodily injuries ... and shall have suffered any of the losses specified [herein] ... the Insurance Company shall pay ... the amount of insurance specified for such loss..... All [AD & D] Insurance benefits will be paid immediately after receipt of due proof." Courts which have considered whether similar language confers discretion on plan administrators have consistently held that language requiring "satisfactory" proof of the claimed loss grants discretionary authority requiring application of the arbitrary and capricious standard of review. *See, e.g., Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir.1996) (citing cases) (holding that plan requiring "satisfactory written proof of claimed loss" confers discretion to determine eligibility for benefits); *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 379–80 (7th Cir.1994) (holding that ERISA plan stating that insurer would pay long-term disability benefits "upon receipt of proof" and that "[a]ll proof must be satisfactory to [the insurer]" furnished sufficient discretion to apply the arbitrary and capricious standard of review); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir.1991) (holding that provision in ERISA plan providing that benefits entitlement determination would be made "on the basis ... of evidence satisfactory to the [trustee]" conferred discretion on plan administrator, thus requiring application of arbitrary and capricious standard of review).

■ Whether Policy No. 26600-G confers discretion on plaintiff is decidedly less clear.

However, as *Firestone* and its progeny hold, it is not necessary that an ERISA plan contain a clear and unequivocal grant of discretionary authority to the administrator to determine eligibility for benefits or to construe plan terms for a court to find that the plan confers such discretion. While in most cases the plan language alone will determine whether the plan confers discretion, *Firestone* authorizes a court to look to the parties' course of dealing and other manifestations of the parties' intent in making such a determination. *See Firestone,* 489 U.S. at 112; *Heasley,* 2 F.3d at 1256.[1] Policy No. 26600–G itself contains no express grant of discretion with regard to eligibility or interpretation. With regard to eligibility, the policy merely requires the covered employee to have been employed for six months and to have one or more dependents. With regard to interpretation, defendant argues that the policy is silent. The first page of the policy provides:

> In return for the payment of the premiums when they fall due Metropolitan Life Insurance Company (Herein Called Metropolitan) will pay the Insurance and other benefits which are described in the Exhibits, subject to the terms and provisions of this Policy. The Schedule of Exhibits sets forth each Exhibit which is to be attached to and made a part of this Policy and to whom each such Exhibit applies.

The booklet entitled "Dependent Group Life Insurance Plan," appended as Exhibit Number 1 to the policy, states that plaintiff "has the exclusive right to interpret the provisions of the Plan," and further states that the policy and the employee's policy application "legally govern[ ] the operation of the plan."

■ It is clear that the booklet defers to the policy proper as controlling, a fact which, in conjunction with the policy's silence, might in other circumstances preclude a finding of discretion. However, the Court finds that the policy's incorporation of the benefits booklet, which expressly reserves discretion to plaintiff, unambiguously evidences the parties' intention that plaintiff would retain the exclusive right to interpret all plan provisions.

■ Having found that, regardless of which instrument governed, plaintiff is required to pay AD & D benefits only where an accident was the singular cause of death and that plaintiff retained the discretion to interpret plan provisions, the Court must determine whether plaintiff's denial of AD & D benefits based on its determination that decedent's death was not accidental was arbitrary and capricious. *See Abnathya,* 2 F.3d at 40. Under the arbitrary and capricious standard, which is similar to the abuse of discretion standard, a court may conclude that a plan administrator's determination is arbitrary and capricious only if the determination is " 'without reason, unsupported by substantial evidence or erroneous as a matter of law.' " *Id.* (quoting *Adamo v. Anchor Hocking Corp.,* 720 F.Supp. 491, 500 (W.D.Pa.1989)); *Moats v. United Mine Workers of America Health and Retirement Funds,* 981 F.2d 685, 688 (3d Cir.1992) ("In a case involving the interpretation of a provision of a pension plan, … under the arbitrary and capricious standard, the trustee's interpretation should be upheld even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan."). This review is necessarily narrow in view of the policies underlying the Supreme Court's decision in *Firestone,* and this Court " 'is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.' " *Id.* (quoting *Lucash v. Strick Corp.,* 602 F.Supp. 430, 434 (E.D.Pa.1984), *aff'd,* 760 F.2d 259 (3d Cir. 1985)).

---

1. Where the plan language and other evidence of intention are ambiguous regarding discretion, the Third Circuit has instructed that courts should apply the rule of contra proferentum. *See Heasley,* 2 F.3d at 1257 (holding that grant of discretion was ambiguous where text of plan suggested contradictory inferences and the parties' course of dealing was ambiguous). Under that rule, "if, after applying the normal principles of contractual construction, [an] insurance contract is susceptible of two different interpretations, … the interpretation that is most favorable to the insured will be adopted." *Id.* Here, the Court finds no ambiguity in plaintiff's reservation of discretion, and thus need not apply the rule of contra proferentum.

■ The Third Circuit has adopted a series of factors for courts to consider in determining whether the Plan administrator's interpretation of the Plan's terms was reasonable. *See Moench v. Robertson,* 62 F.3d 553, 566 (3d Cir.1995), *cert. denied,* 516 U.S. 1115, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996). Those factors include:

> (1) Whether the interpretation is consistent with the goals of the plan; (2) whether it renders any language in the plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the [administrator] interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the plan.

*Id.* (quoting *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.,* 48 F.3d 365, 371 (8th Cir.). *cert. denied,* 516 U.S. 913, 116 S.Ct. 300, 133 L.Ed.2d 205 (1995)). No single factor is dispositive, and thus the Court must examine the factors as a whole in making a determination. *See McCall v. Metropolitan Life Ins. Co.,* 956 F.Supp. 1172 (D.N.J.1996).

■ Plaintiff declined to pay AD & D benefits to defendant on the ground that the decedent's death was not accidental, but rather an expected and foreseeable consequence of her driving while intoxicated. An analysis of plaintiff's determination under the *Moench* factors raises material questions of fact which preclude entry of summary judgment in favor of either party.

Beginning with the first three *Moench* factors, defendant has not pointed to any plan goal which conflicts with plaintiff's interpretation of the plan,[2] any plan language rendered meaningless by plaintiff's interpretation of the plan, or any pertinent provision of ERISA with which plaintiff's interpretation conflicts. None of these factors suggest that plaintiff's interpretation of the plan was unreasonable, arbitrary or capricious.

The Court turns next to the fourth *Moench* factor, whether the administrator interpreted the provision in question consistently. Defendant argues that plaintiff's claims file shows conflicting interpretations of the plan language by the people who reviewed defendant's claim and by plaintiff in reviewing other AD & D claims involving drunk driving fatalities. Defendant argues that plaintiff's initial approval and payment of defendant's AD & D claim under Policy No. 18000–G, based on plaintiff's determination that defendant had submitted "due proof" conflicts with its denial of dependent AD & D benefits under Policy No. 26600–G. *See* Burzynski Aff., Ex. H (death claim worksheet). Defendant also points to three incidents in 1988 and 1989 in which plaintiff paid AD & D benefits for drunk driving fatalities.

Plaintiff responds that its initial payment was a mistake, and while it does not dispute that it previously paid AD & D benefits for drunk driving fatalities, it argues that it has not done so since the onset of heightened awareness of the risks of driving while intoxicated.

The Third Circuit has instructed that past practice in interpreting plan provisions is of no significance where the plan language is clear. *Epright v. Environmental Resources Management, Inc.,* 81 F.3d 335, 339 (3d Cir. 1996) (finding plan language clear where plan specifically defined term which was the focus of the parties' dispute). Here, the plan language is not clear because, as noted, the plan does not define "accident" or "accidental loss." Thus, under *Moench,* plaintiff's inconsistent interpretations are very relevant to the Court's determination of whether plaintiff's current interpretation was arbitrary and capricious.

The first inconsistency is that created by plaintiff's past payment of AD & D benefits for drunk driving fatalities and plaintiff's recent denial of the same benefits for drunk driving fatalities. The Court is not persuaded by plaintiff's effort to attribute such inconsistent interpretations of accident or accidental loss to recent heightened public awareness of the hazards of drinking and

---

**2.** While defendant argues that plaintiff's denial of benefits was intended to punish defendant and his son for the decedent's drunk driving, and that such motive is inconsistent with the articulable goals of the plan, defendant does not identify any plan goal.

driving. The plan itself requires plaintiff to interpret the plan provisions consistent with the language, goals and policies of the plan, not in accordance with the ebb and flow of public opinion.

A second inconsistency appears in plaintiff's handling of defendant's claims at the various stages of plaintiff's claims review process. On October 13, 1993, plaintiff's benefits supervisor approved defendant's claim for $100,000 in dependent AD & D benefits. *See* Burzynski Aff., at Ex. G. On November 1, 1993, plaintiff also appears to have approved defendant's claim for $132,000 in AD & D benefits under the decedent's policy. *See* Burzynski Aff., Ex. H (noting that defendant submitted "due proof" of loss). On the same date that plaintiff appears to have approved the AD & D claim under the decedent's policy, plaintiff issued defendant a claim statement, which stated that $132,000 in life insurance benefits had been deposited in an account in defendant's name, and which further noted that defendant's claims for accidental death insurance were under consideration. *See* Potter Aff., at Ex. D. On November 11, 1993, plaintiff notified defendant that his claims for AD & D benefits were being reviewed by plaintiff because decedent's collision was alcohol-related. *See* Potter Aff., at Ex. F, Ex. G. On December 2, 1993, one of plaintiff's employees issued an internal memorandum to a senior approver or supervisor which stated that a determination on defendant's AD & D claim was pending review by the "law" department, that a determination as to the dependent AD & D claim should be withheld until receipt of the "law response." *See* Burzynski Aff., Ex. C. The memorandum also stated "[n]o plan exclusion for alcohol." *See id.* On May 26, 1994, plaintiff denied defendant's AD & D claims stating that the decedent's death was foreseeable, not accidental, and that "driving while intoxicated is too great a risk to be tolerated without penalty." *See* Potter Aff., Ex. H. In response to defendant's instant motion, plaintiff submitted the affidavit of its claims supervisor certifying that plaintiff's payment of $132,000 to defendant, instead of the $44,000 to which he was entitled in life insurance benefits, was a "mistake." Dygert Aff., at ¶ 8.

The evidence suggests that plaintiff may have initially approved defendant's AD & D claims, then later denied them; and that plaintiff's denial may have been a "penalty" for decedent's drunk driving. However, the record is unclear as to what actually transpired during the claims approval process, or why, given its reliance on heightened awareness of the hazards of drunk driving, plaintiff failed to amend its policies (or the SPD) to define "accident" or to exclude coverage for alcohol-related injuries. The seemingly conflicting determinations at the various levels of plaintiff's claims review process, questions concerning plaintiff's motivation behind the denial[3] and the lack of sufficient explanation for plaintiff's differing treatment of past and recent AD & D claims raise material fact questions which preclude entry of summary judgment in favor of either party.[4]

An analysis of the fifth *Moench* factor, whether plaintiff's interpretation of the term "accident" or "accidental" is contrary to the clear language of the plan, also precludes entry of summary judgment in favor of either party. As noted, the plan provides AD

3. The Court does not understand where plaintiff derives its authority to "penalize" even universally condemned activities, if that was plaintiff's motivation.

4. On January 22, 1998, in response to a request by defendant, the Court entered an order permitting defendant to submit additional evidence in support of his motion and allowing plaintiff the opportunity to review that evidence and submit a response. On January 27, 1998, defendant submitted copies of plaintiff's claims files for the three prior AD & D claims for drunk driving fatalities which plaintiff had paid. All of the claims were paid out of the same office and involved facts similar to the instant case. One of the three claims was handled by the same claims approver who denied defendant's claims. *See* Third Supplemental Affidavit of Irwin P. Burzynski, Ex. A–F. While this evidence supports plaintiff's admitted inconsistency between its past and recent plan interpretations, it also reinforces the Court's holding that summary judgment is inappropriate given the lack of sufficient explanation for plaintiff's changed interpretation. Further, because defendant's evidence does not raise any new issue or alter the Court's findings with regard to those issues already raised, there is no need for the Court to await plaintiff's response before ruling on the instant cross-motions.

& D benefits where death occurs exclusively or singularly as the result of an accident or accidental injury. Neither the policies nor the SPD define "accident" or "accidental loss." In denying defendant's claims for AD & D benefits, plaintiff based its interpretation of "accident" and "accidental loss" on "common sense" and "case law." Potter Aff., Ex. H., at 2.

In the absence of any plan definition, the Court looks to case law defining "accident" and "accidental loss" in the context of insurance coverage. Because the Court's research has not yielded any controlling authority on point, the Court looks to persuasive authority.

In *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir.1990), the Court of Appeals for the First Circuit reviewed the decision of the Magistrate Judge which upheld an insurer's denial of accidental death benefits pursuant to an ERISA plan covering loss "due to accidental injury" where the insured fell to his death after hanging over the edge of a guard rail. Noting that the definition of "accident" has perplexed both state and federal courts for years, the *Wickman* court explained that the actual meaning of the word is "largely intuitive." *Id.* at 1087. *Wickman* articulated a two-pronged inquiry for determining whether death is accidental. First, a court must ascertain whether the insured, when the policy was purchased, subjectively expected an injury similar in type to the kind suffered. If the Court finds that the insured did not expect such an injury, or where there is insufficient evidence to accurately determine the insured's actual expectation, the court must then

> engage in an objective analysis of the insured's expectations. In this analysis, one must ask whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct.

*Id.* at 1088. In affirming the Magistrate Judge's decision upholding the denial of benefits, the court stated:

> [t]he linchpin of the magistrate's findings was his conclusion that "[the decedent] knew or should have known that serious bodily injury or death was a probable consequence substantially likely to occur as a result of his volitional act..." This finding equates with a determination either that [the decedent] expected the result, or that a reasonable person in his shoes would have expected the result, and that any other expectation would be unreasonable.

*Id.*

In *Todd v. AIG Life Insurance Co.*, 47 F.3d 1448 (5th Cir.1995), the Court of Appeals for the Fifth Circuit reviewed an administrator's denial of accidental death benefits under a plan covering loss due to "bodily injury caused by an accident ... resulting directly and independently of all other causes" where the insured died from autoerotic asphyxiation during masturbation. Finding that asphyxia is not a condition that necessarily leads to death and that it is "commonplace" for those who engage in such an activity to regain consciousness and survive, the court declined to announce a *per se* rule that death caused by autoeroticism is never accidental. *Id.* at 1452. After surveying the authorities on which the district court's decision was made and noting that the district court relied primarily on *Wickman*, the Fifth Circuit upheld the district court's adoption of *Wickman*, stating:

> [F]or death under an accidental death policy to be deemed an accident, it must be determined (1) that the deceased had a subjective expectation of survival, and (2) that such expectation was objectively reasonable, which it is if death is not substantially certain to result from the insured's conduct. This holding was appropriate.

*Id.* at 1456.

In *McLain v. Metropolitan Life Ins. Co.*, 820 F.Supp. 169 (D.N.J.1993), the district court upheld a plan administrator's denial of accidental death benefits under a plan covering loss as a result of "accidental bodily injuries ... independently of all other causes" where the insured died from a cocaine-related cardiac arrest and the autopsy report declared the manner of death an "accident." Applying the *Wickman* analysis, the *McLain* court found that based on popu-

lar knowledge of the hazards of cocaine use, the insured knew or should have known that death was substantially likely to occur as a result of his cocaine ingestion. *Id.* at 177–78. Accordingly, the court held that the insurer's determination that the claimant failed to submit satisfactory proof that the cocaine-related fatal heart attack was accidental was not arbitrary and capricious. *Id.* at 178. The court noted that even under *de novo* review the result would be the same. *Id.* at nn. 3 & 9

Neither the Third Circuit nor any other Court of Appeals has ruled on a plan fiduciary's denial of accidental death benefits where the decedent was involved in a drunk driving fatality. However, the few district courts which have done so have upheld the denial, reasoning that drunk driving fatalities are not accidental because reasonable persons are aware of the hazards of drunk driving and thus would view death as a reasonably foreseeable result of such activity. *See, e.g., Cozzie v. Metropolitan Life Ins. Co.,* 963 F.Supp. 647 (N.D.Ill.1997) (citing *McLain* and upholding denial because insurer's determination that drunk driving death was "not solely caused by external and accidental means, nor was it sustained independently of all other causes" was not unreasonable under arbitrary and capricious standard); *Nelson v. Sun Life Assurance Co.,* 962 F.Supp. 1010 (W.D.Mich.1997) (applying *Wickman* and upholding denial because company's determination that death while driving after excessive alcohol consumption was not a "direct result of the accident and independently of all other causes" was not implausible); *Miller v. Auto–Alliance Int'l. Inc.,* 953 F.Supp. 172 (E.D.Mich.1997) (upholding denial because administrator's determination that death while driving under the influence of alcohol was not an accident was not unreasonable); *Fowler v. Metropolitan Life Ins. Co.,* 938 F.Supp. 476 (W.D.Tenn.1996) (holding that fiduciary's denial of benefits based on determination that drunk driving fatality was not

the "direct result of bodily injuries effected through … accidental means, and independently of all other causes" was not arbitrary and capricious where decedent lost control of car while negotiating a curve). While some of these authorities cited *Wickman,* none of them actually employed the two-pronged test, nor did they consider the insurer's denial under the *Moench* factors.

The Court finds that the two-pronged standard articulated in *Wickman* and followed (and perhaps expanded) in *Todd*[5] provides a workable framework for determining whether death under an accidental death policy may be deemed an accident. Plaintiff agrees that these authorities articulate the appropriate standard and, in fact, cited *Wickman* as a governing legal authority in its denial letter to defendant. *See* Potter Aff., Ex. H, at 3. However, despite its asserted reliance on *Wickman,* plaintiff's denial letter stated that the decedent's death was "foreseeable" and "expected" and that decedent's driving while intoxicated "significantly elevat[ed] the risk that harm will occur." Potter Aff., Ex. H, at 2. *Wickman* requires more than mere foreseeability or increased risk. For death to be deemed accidental under *Wickman,* it must first be determined that the decedent had an actual expectation of survival. *Wickman,* 908 F.2d at 1088. If it is determined that the insured expected to survive, or where there is insufficient evidence of the insured's actual expectations, then it must be determined whether an expectation of survival is objectively reasonable, which it is if death is not "highly likely to occur as a result of the insured's intentional conduct." *Id.* A death will be deemed non-accidental under *Wickman* only where the decedent expected to die, or where a reasonable person in the decedent's shoes would have viewed death as "highly likely to occur" and that "any other expectation would be unreasonable." *Id.*

Here, there is insufficient evidence to make a determination under either prong of the *Wickman* analysis. The parties have not

---

5. In *Todd,* the Court of Appeals for the Fifth Circuit affirmed the district court's decision granting summary judgment in favor of a plan beneficiary. In so doing, the *Todd* court found that the district court "followed the essence of *Wickman*" when it ruled that for death to be accidental it must be determined that the decedent had an actual expectation of survival, and that the expectation was objectively reasonable, "which it is if death is not substantially certain to result from the insured's conduct." *Todd,* 47 F.3d at 1456.

presented any evidence as to the decedent's subjective expectations when the policy was purchased. Nor has plaintiff submitted any evidence that it determined, or that an objectively reasonable person would determine, that the decedent expected to die or that death was "highly likely" to occur as a result of her drunk driving and that "any other expectation would be unreasonable." At best, plaintiff's submissions establish the undisputed proposition that alcohol consumption impairs motor functions and faculties and increases the risk of driving collisions. The Court declines to find that plaintiff was not arbitrary and/or capricious, as a matter of law, when, in its denial letter, it purported to apply "the law," cited *Wickman,* and then misapplied it by ignoring its requirement that death be "highly likely" to negate a finding of accidental death. The Court cannot find as a matter of law that death is "highly likely to occur" as a result of drunk driving and that "any other expectation would be unreasonable" where many drunken drivers survive (to be prosecuted or perhaps to repeat their risky conduct).

Further, plaintiff's own internal memorandum referred to decedent's death in a car accident, a plain language classification also used in the police report which referred to the collision as an "accident;" and the autopsy report which deemed decedent's death accidental. This belies plaintiff's reliance on "common sense" in its denial letter. While there is authority finding death non-accidental under circumstances similar to the case at bar, none of those cases actually employed the *Wickman* standard or analyzed the insurer's denial of benefits under the *Moench* factors. In light of the foregoing, the Court finds that there is insufficient evidence in this record to decide whether plaintiff contravened the plain language of the plan in refusing to pay AD & D benefits for decedent's alcohol-related death.

Lastly, *Firestone* requires the Court to consider whether plaintiff's dual role as claims fiduciary and plan administrator created a conflict of interest that could realistically be expected to bias plaintiff's decision. *See Firestone,* 489 U.S. at 115 ("[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor[ ] in determining whether there is an abuse of discretion."). Where an insurer acts as both plan administrator and claims fiduciary making discretionary decisions as to the payment of benefits under the plan, the insurer's profit-making objective creates an inherent conflict of interest. *See Brown v. Blue Cross & Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1561 (11th Cir.), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). That conflict may arguably be ameliorated where, as here, the plan is experience-rated because the premiums charged to the employer are adjusted annually based on claims paid the previous year and thus the fiduciary's incentive to deny claims to increase profits is lessened, if not eliminated. Given the Court's finding that gaps in the record preclude entry of summary judgment in favor of either party, the Court need not decide at this time whether, or to what extent, plaintiff's dual role as plan fiduciary and administrator must be weighed in determining whether plaintiff abused its discretion.

## CONCLUSION

For the foregoing reasons, the Court will deny that part of plaintiff's motion for summary judgment seeking declaratory relief. Having so ruled, the Court will also deny that part of plaintiff's motion seeking restitution of the alleged overpayment. The Court will also deny defendant's motion for partial summary judgment.[6] An appropriate Order accompanies this Opinion.

---

6. Plaintiff also argues that its denial of AD & D benefits was proper under the plan provisions excluding coverage for purposely/intentionally self-inflicted injury. Defendant argues that plaintiff cannot now assert that its denial of benefits was made pursuant to the SPD provision barring recovery for intentionally self-inflicted injury because: (1) plaintiff failed to state that as a basis for denial in its denial letter; (2) that provision conflicts with the language in Policy No. 18000–G; and (3) the evidence supports a finding that decedent's death was not intentional. Having denied the parties' cross-motions on other grounds, the Court need not now address the parties' arguments concerning self-inflicted injury.

## ORDER

For the reasons set forth in the accompanying Opinion, **IT IS** on this 29th day of January 1998 **ORDERED** that defendant's motion for partial summary judgment awarding $232,000 in AD & D benefits, plus interest, costs and fees is denied;

**IT IS FURTHER ORDERED** that plaintiff's cross-motion for summary judgment declaring that plaintiff's denial of defendant's AD & D claims was proper is denied;

**IT IS FURTHER ORDERED** that plaintiff's cross-motion for summary judgment awarding plaintiff $88,000 in restitution, plus interest, costs and fees is denied;

**IT IS FURTHER ORDERED** that plaintiff's cross-motion for summary judgment declaring that AD & D benefits are not payable under the plan where the participant's death is the result of the participant's driving while intoxicated is denied;

**IT IS FURTHER ORDERED** that plaintiff's cross-motion for summary judgment declaring that AD & D benefits are not payable under the plan where the covered dependent's death is a result of the dependent's own driving while intoxicated is denied.